UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.        ) | CRIMINAL NO. 04-10126 RWZ |
| ) | |
| VICTOR VARGAS      ) | |

DEFENDANT'S MOTION FOR JUDGMENT OF
ACQUITTAL AFTER TRIAL AND FOR A NEW TRIAL

Defendant respectfully moves this Court, pursuant to Rules 29 and 33, Fed. R. Crim. P., for judgment of acquittal after a jury verdict and for a new trial. At trial, the Court reserved ruling on the motion for judgment of acquittal. Transcript of Trial, July 19, 2005 (hereafter Tr.\_), at 63.

I.

At trial, the government offered the testimony of Thomas Liszkiewicz, a fingerprint "expert" with no undergraduate degree (he studied physical education in college, Tr.30), and no science background. Mr. Liszkiewicz was trained as an apprentice in the local police department, with occasional FBI trainings, and, upon beginning work at Homeland Security, was given no "phased program" of training. Tr.36. He performed the fingerprint comparisons at issue here only two months after starting at Homeland Security. Tr.31. He took no notes of his comparisons. Tr.30.

Mr. Liszkiewicz testified that a fingerprint "could" have hundreds of ridge characteristics, including ridge endings, bifurcations, and so forth. Tr.44. He had idea how frequently these characteristics might appear in an average print (e.g., how frequently bifurcations might appear). Tr.45-6. Nor was he aware of studies or learning regarding the statistical significance of

recurrence of a single characteristic, Tr.48, nor of the likelihood of recurrence of multiple characteristics. Id. He could provide no support for use of eight points of comparison (while itemizing only five on the charts shown to the jury). Tr.50. With regard to the print on exhibit 4, he testified only that there were "more than five points...." Tr.22.

Mr. Liszkiewicz testified that, in addition to comparing prints lifted from the passport application with the print card taken from a man identifying himself as Victor Vargas in 2003, he also compared a single print taken from an INS A-file. He testified that the INS print was a "tented arch" which occurs in "three to two percent of the population." Tr.23. He testified to the common contours of the prints, saying "if you look, coming in from the right side of the finger, you'll see ridges coming upward and sort of end. They don't go anywhere." Tr.25. Without identifying a single common characteristic (and not merely the overall contour of the print which is shared by 2-3% of the population, that is over one million persons), he pronounced the prints "made by one and the same individual." Tr.25-26. Mr. Liszkiewicz acknowledged that he made the comparison from a faxed copy of the INS print, Tr.42, and that he had no notes showing what points of comparison he had relied upon in reaching his conclusion.

As was apparent, Mr. Liszkiewicz was not making comparisons based upon rigorous examination of common characteristics. Rather, he was "eyeballing comparisons."

Q: You're not testifying here that basically you're eyeballing comparisons, are you?

A: That's the way I was taught how to do it.

Tr. 33.

## II.

To be clear, this is not a broadly framed challenge to fingerprint evidence. The admissibility of fingerprint testimony has been under assault, in part the result of a decision of

Judge Pollak, former dean of the Yale Law School, who first ruled that fingerprint examiners could not express an opinion that two prints were a match, and who then abandoned his ruling (in rather unconvincing fashion).  See United States v. Plaza, 188 F.Supp. 2d 549, vacating United States v. Plaza, 179 F. Supp. 2d 492 (E.D. Pa. 2002).  The present challenge is more narrowly framed: even if fingerprint testimony is otherwise admissible, this "expert" could not explain its mysteries.

> Federal Rule of Evidence 702 states:
>
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The proponent of expert testimony bears "the burden to show that his expert is 'qualified to testify competently regarding the matters he intended to address; [] the methodology by which the expert reached his conclusions is sufficiently reliable; and [] the testimony assists the trier of fact.'" United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (cites omitted).  In turn, the trial court is required under Fed. R. Evid. 104(a) to address preliminary questions regarding the admissibility of expert testimony under Fed. R. Evid. 702.

As relevant here, under both Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and Kumho Tire Co. v. Carmichael, 526 U.S. 137, 149 (1999), the trial judge must determine whether "the expert's opinion will have a reliable basis in the knowledge and experience of his discipline." Daubert, 509 U.S. at 592.

> [W]here such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question, ... the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'

Kumho Tire, at 149, quoting Daubert.

In Daubert itself, upon remand from the Supreme Court, the Ninth Circuit held that the testimony of experts, which had been offered to prove that the drug Bendectin caused injury, was inadmissible under Rule 702. Daubert v. Merrell Dow Pharmaceuticals, Inc., 43 F.3d 1311 (9th Cir.), cert. denied, 516 U.S. 869 (1995). In the decision, the court stated that the first prong of Daubert, which requires a trial court to determine whether the expert testimony is based upon the scientific method, is not satisfied by "an expert's self-serving assertion that his conclusions were derived by the scientific method." Id. at 1316. "[T]he expert's bald assurance of validity is not enough." Id. Rather, "the party presenting the expert must show that the expert's findings are based on sound science, and this will require some objective, independent validation of the expert's methodology." Id.

Here, the "expert" could not aid the jury in evaluating his conclusion that prints were "made by one and the same individual to the exclusion of all others." Tr.20. To link defendant to the fingerprints of the man who had identified himself as Victor Vargas, the expert "eyeballed" prints, and invoked broad patterns as a means of identification. He used a faxed copy of a print to make a comparison, could not recreate his original analysis (no notes), took no notes of other analyses, and provided no reasonable link between the few comparisons he claimed and their significance as identifying characteristics. During his testimony, he pointed to two charts which showed only five common characteristics and testified as to exhibit 4 merely that there were "more than five points..." Tr.22. Elsewhere he testified: "I have always been trained that eight is the minimum." Tr.49. If so, his testimony that both Exhibit 4 and the INS print were a match to the passport application was unsupported even by his own standards. Neither Daubert nor the Federal Rules of Evidence "require[] a district court to admit opinion

evidence which is connected to existing data only by the ipse dixit of the expert." Norris v. Baxter Healthcare Corp., 397 F.3d 878, 886 (10th Cir. 2005).

In United States v. Frazier, supra, the trial court, in a sexual assault case, excluded the proposed testimony of a forensic crime scene investigator that recovery of hair or seminal fluid would be expected after a sexual assault. The court, exercising its gatekeeping role to determine whether the proposed expert provided a reliable foundation or basis for his opinion, stated:

> When questioned specifically about the basis for his opinion, [the forensic investigator] said his opinion was based on his experience, and on various texts in forensic investigation. However, even after repeated prompting, [he] never explained just how his own experience, or the texts he mentioned, supported his ... opinion.

Id. at 1265. The district court excluded the testimony "because [the forensic expert] failed to establish that his opinions were methodologically reliable or sound." Id.

So too here, particularly where the "expert" could communicate no foundation for his opinion and where be thought it sufficient to "eyeball" a print to make a comparison.

Because the government's proof was insufficient without this testimony, judgment of acquittal should enter. Alternatively, this Court should order a new trial.

By his attorney,

/s/ Charles McGinty
Charles P. McGinty
 B.B.O. #333480
Federal Defender Office
408 Atlantic Avenue, 3rd Floor
Boston, MA  02110
Tel: 617-223-8061

Date:  July 26, 2005